IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IVAN HARVEY,

        Plaintiff,

vs.                                  CASE NO.  3:09-cv-00402-WS-MD

EFIONG O. ANDEM, et al.,

        Defendants.
_____/

## DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT

Defendants Efiong O. Andem, Cathy Allin, Julian Aviles, Michael J. Lord, Robert D. Collins, and Marsha Nichols, by and through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, and Local Rule 56.1, submit this Motion for Summary Judgment.  In support, Defendants submit the following:

## PRELIMINARY STATEMENT

Plaintiff, Ivan Harvey, is an inmate in the custody of the Florida Department of Corrections, currently incarcerated at Santa Rosa Correctional Institution. (Exhibit A.) Dr. Andem is the Chief Health Officer ("CHO") assigned to Jackson Correctional Institution ("C.I.").  (Exhibit F- Andem Affidavit)  Dr. Lord is an orthopedic surgeon, and at times relevant to the complaint provided contract medical services to the Florida Department of Corrections.   (Exhibit H- Lord Declaration)  Dr. Aviles is the CHO assigned to Union C.I.  (Exhibit G - Aviles Affidavit) Ms. Allin was the Senior Health Administrator (SHSA) at Union C.I. at times relevant to the complaint.  (Exhibit I- Allin

1

Declaration)    Ms. Nichols is an Advanced Registered Nurse Practitioner ("ARNP") assigned to Santa Rosa C.I.  (Exhibit J- Nichols Affidavit) Dr. Collins was the CHO at Santa Rosa C.I. at times relevant in the complaint.   (Exhibit K-Collins Declaration)

Plaintiff filed suit on September 6, 2009, under Section 1983 alleging that Defendants were deliberately indifferent to his medical needs.   Plaintiff sues the Defendants in their individual capacities.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges, in support of his deliberate indifference claim, the following against the six served Defendants in this case:

1. Plaintiff claims he requested to see Dr. Andem after an alleged unprovoked attack by a correctional officer[1] and he was refused. (Doc.1, Section V., ¶ 1, 2) Plaintiff alleges that after examining Plaintiff, Dr. Andem denied him "effective" pain medicine for his

_____

[1] Defendants would note that the "unprovoked attack by a correction officer," referenced by Plaintiff is a gross misrepresentation of the incident that occurred on April 29, 2008. (Doc. 1, Section V., ¶1) As the attached exhibits demonstrate, on that date, while Plaintiff was being escorted by Officer Teal, he began yelling and trying to pull away from the officer. (Exhibit B)  Plaintiff struck Officer Teal with his left elbow and struck the officer in the left upper shoulder with his walking cane. (Id.) During the incident, Officer Teal did not initiate force against Plaintiff, rather, only after Plaintiff attacked Officer Teal, did Officer Teal put Plaintiff on the ground using minimum force. (Exhibits C and D) Plaintiff has previously filed a Section 1983 claim challenging this specific use of force and Plaintiff's case was dismissed as *Heck*-barred. Moreover, the magistrate recommended sanctions in the report and recommendation due to Plaintiff knowingly bringing forth false information pertaining to his back condition. (Exhibit E) However, the facts surrounding the April 29, 2008 incident are not material to the issues presented in this case.  Plaintiff's claims in this case deal with the medical attention Plaintiff received after the incident, specifically, whether Plaintiff received adequate treatment and/or pain medication for his alleged back condition.  (Doc. 1)  As such, any potential dispute over the facts surrounding this incident would not undermine Defendants' Motion for Summary Judgment as they are irrelevant to the issues presented in this case.

pain, a CT scan due to the cost of the exam, and delayed Plaintiff's visit to the orthopedic specialist. (Doc.1, Section V., ¶ 3 and ¶ 4)

2. Plaintiff states he was examined by Dr. Lord in August 2008 and October 2008. (Doc.1, Section V., ¶ 5, 6) Plaintiff states he informed Dr. Lord of his need for "effective" pain medication during both visits and Dr. Lord denied him the same. (Id.)

3. Plaintiff states he was examined by Dr. Aviles on August 11, 2008 and informed Dr. Aviles that Naproxyn was not working to alleviate his pain. (Doc. 1, Section V., ¶ 8) Plaintiff claims he asked Dr. Aviles in person and through inmate requests for "effective" pain medication and Dr. Aviles refused to prescribe a different medication. (Id.)

4. Plaintiff states he filed a request to Dr. Aviles on February 2, 2009 and it was improperly denied by Cathy Allin. (Doc.1, Section V., p.9) Plaintiff alleges Ms. Allin inaccurately characterized Plaintiff's previous medical complaints in the response to the request. (Id.)

5. Plaintiff states he submitted a request slip to Dr. Collins upon arriving at Santa Rosa C.I. wherein he stated that he was in pain, requested "effective" pain medication, and sought a "test" to determine whether he had nerve damage. (Doc. 1, Section V., ¶ 10) Plaintiff states Dr. Collins failed to answer his request.

6. Plaintiff alleges that ARNP Nichols refused to give him "effective" pain medication on March 3, 2009. (Doc.1, Section V., ¶ 10) Plaintiff also states ARNP Nichols improperly denied the inmate request submitted to Dr. Collins by stating that Plaintiff had already been evaluated and that aspirin and Tylenol were the treatment. (Id.) Plaintiff claims that ARNP Nichols took away his cane pass on August 11, 2009 as

3

retaliation for filing a grievance against ARNP Nichols and another nurse. (Doc.1, Section V., ¶ 14)

7. Plaintiff seeks compensatory, nominal, and punitive damages as to all claims. (Doc.1, Section VII.) Plaintiff also seeks injunctive relief for the use of a walking cane and for what he considers "effective" medication. (Id.)

## DEFENDANTS' STATEMENT OF MATERIAL AND GENUINE FACTS

1. Plaintiff, Ivan Harvey, is an inmate in the custody of the Florida Department of Corrections, currently incarcerated at Santa Rosa Correctional Institution. (Exhibit A)

2. On April 29, 2009, Plaintiff received a post-use-of-force exam by medical staff. (Exhibit F at F2 ¶ 4, F6) The record indicates that Plaintiff only complained of pain in his ankle, his epigastric region, and mouth. (Id.) Plaintiff had no open areas in the mouth or gum line. (Id.) There was no edema, bruising, open areas, or discoloration to the epigastric region or ankle. (Id.) The record does not indicate that Plaintiff complained of any back pain. (Id.) The Plaintiff was discharged with no injuries identified. (Id.)

3. Plaintiff refused medical treatment the following day, April 30, 2008. (Exhibit F at F2 ¶ 5, F8, F28) On May 6, 2008, Dr. Andem examined Plaintiff and noted that he was able to: 1) sit up on the bed by himself, 2) get out of the bed by himself, and 3) walk using a walker. (Exhibit F at F2 ¶ 5, F29) Plaintiff was given 800mg of Motrin. (Exhibit F at F2 ¶ 5, F29) After the consult, Plaintiff was returned to his cell with no other complaints noted in the record. (Id.) On May 7, 2008, Plaintiff initiated a sick-call requesting an x-ray of his back. (Id.) Dr. Andem was informed of this request by medical staff and ordered an x-ray of Plaintiff's back. (Id.)

4

4.  An x-ray of Plaintiff's back was taken on May 8, 2008.  (Exhibit F at F2 ¶ 6, F36)
The report stated that the Plaintiff's x-ray resulted in a "normal study."  (Id.)

5.  On May 26, 2010, Plaintiff filed a formal grievance; log number 0805-107-029,
stating that he had not received the results of the x-ray and that his pain medication was
ineffective.  (Exhibit F at F3 ¶ 7, F38). He also stated that he wanted a CT scan or MRI
stating that, "certain injuries cannot be detected by x-rays."  (Id.)  Dr. Andem responded
to Plaintiff's grievance stating that his x-ray results came back normal and that he had a
current prescription for Anaprox, which he could take for any back pain he was
experiencing.  (Exhibit F at F3 ¶ 7, F39)  Dr. Andem also informed Plaintiff that based on
his x-ray results; there remained no reason for a CT scan or referral to a specialist. (Id.)

6.  Plaintiff filed an inmate request on June 9, 2008 requesting a consultation with an
orthopedic surgeon. (Exhibit F at F3 ¶ 7, F40)  On June 10, 2008, Dr. Andem requested a
consult from the Orthopedic Surgeon at Reception and Medical Center and answered
Plaintiff's request informing Plaintiff of the consult request.  (Exhibit F at F3 ¶ 7, F4 ¶ 7,
F40)  Plaintiff was transferred from Holmes C.I. to Union C.I. on June 16, 2008. (Exhibit
F at F4 ¶ 7, F41)  Plaintiff arrived at Union Correctional Institution on June 20, 2008.
(Exhibit G at G1 ¶ 3, G6, G7)

7.  On July 30, 2008, Plaintiff was examined by Dr. Lord, an orthopedic surgeon, at
Reception and Medical Center.  (Exhibit H at H2 ¶ 4, H5, H6)   Dr. Lord noted several
findings in his consultation report.   The report states that the symptoms complained of by
the Plaintiff were not consistent with a known nerve pattern.  (Exhibit H at H2 ¶ 4, H6)

Dr. Lord also noted in the report that Plaintiff exhibited poor volitional effort and that Plaintiff had a full range of motion with respect to his hip, despite complaints of pain in that area.  (Id.)  Based on Plaintiff's subjective complaints, Dr. Lord recommended a MRI of Plaintiff's lumbar spine, a pass for a cane, a pass limiting the amount of time he spent standing or walking, and a pass for a low bunk; all for a period of three months. (Id.)  As further noted on the consultant's report, Dr. Lord had no clear etiology for the recommendations and made them solely on the basis of Plaintiff's subjective complaints pending the results of the MRI. (Id.)  Upon Plaintiff's return to Union C.I. on July 30, 2008, medical staff requested Plaintiff's MRI examination.  (Exhibit G at G2 ¶ 5, G9)

8.   On August 11, 2008, Dr. Aviles examined Plaintiff and noted that Plaintiff had a limited gait.  (Exhibit G at G2 ¶ 7, G10)  Dr. Aviles authorized a wheelchair pass for long distances, a cane pass for ambulation, a pass restricting the time Plaintiff was allowed to stand, and a back brace for support of Plaintiff's spine.  (Id.)  Dr. Aviles also prescribed Plaintiff 500 mg of Naproxen, an anti-inflammatory pain medication, for six months. (Id.)

9.   On August 14, 2008, Plaintiff was given a MRI examination at Reception and Medical Center.  (Exhibit G at G2 ¶ 8, G23)  The results were received at Union C.I. on August 28, 2008.  (Id.)  On September 4, 2008, medical staff reviewed the MRI results and requested a follow-up consultation with Dr. Lord. (Exhibit G at G2 ¶ 8, G12)

10. On September 10, 2008 Petitioner submitted a request for a front cuff pass, which was issued by medical staff. (Exhibit G at G3 ¶ 8, G12)  Plaintiff submitted a subsequent request for a front cuff pass and back brace on September 23, 2008.  (Exhibit G at G3 ¶ 8,

G13)  On September 24, 2008, Dr. Aviles confirmed that Plaintiff had a front cuff pass. (Id.)

11. On October 15, 2008, Plaintiff was examined once again by Dr. Lord at Reception and Medical Center. (Exhibit H at H3 ¶ 6, H8, H9)  Dr. Lord noted in the consultation report that Plaintiff's MRI showed minimal degenerative changes.  (Exhibit H at H9)  Dr. Lord noted that Plaintiff demonstrated poor volitional effort and that Plaintiff's symptoms seemed significantly out of proportion with his MRI findings.  (Id.)  Dr. Lord recommended a serious of three (3) epidural steroid injections.  (Id.)  The record does not indicate that Plaintiff requested medication from Dr. Lord.  (Id.)

12. On October 16, 2008, medical staff at Union C.I. noted the recommendations of Dr. Lord on Plaintiff's chart and requested the treatment from the Utilization Management Department[2] ("UM").  (Exhibit G at G3 ¶ 9, G14)

13. On January 13, 2009, Plaintiff submitted a sick-call request complaining of severe back pain and requesting to see the Orthopedic Surgeon.  (Exhibit G at G3 ¶ 11, G18)  Medical staff forwarded Plaintiff's chart to Dr. Aviles.  (Exhibit G at G3 ¶ 11, G4 ¶ 11, G18)  On January 14, 2009, Dr. Aviles noted in Plaintiff's medical record that the requested spinal injections were not approved by UM due to: 1) poor effort of the inmate during examination by the orthopedic (Dr. Lord), 2) MRI minimal findings (that is,

---

[2] UM is a branch of the Department of Corrections' Health Services Office which is charged with approving and/or disapproving non-routine medical procedures and treatments.

minimal degenerate changes), and 3) subjective symptoms exceed objective signs. (Exhibit G at G4 ¶ 11, G19, G25)

14. On January 23, 2009, Plaintiff filed a formal grievance stating he was in pain and requesting the spinal injections recommended by Dr. Lord. (Exhibit G at G4 ¶ 12, G26) Dr. Aviles answered the grievance on February 6, 2010 stating that the treatment was denied by the QM[3] advisor.  (Id.)  On January 28, 2009, upon Plaintiff's request, Dr. Aviles referred Plaintiff to the impair committee for an institutional transfer to a wheelchair camp.  (Exhibit G at G4 ¶ 13, G19)

15.  On February 2, 2009, Plaintiff submitted an inmate request addressed to Dr. Aviles stating that he was in extreme pain in his spine and leg.  (Exhibit I at I1 ¶ 3, I4) He also stated that he was beginning to experience numbness and pain in his arms.  (Id.) The Senior Health Services Administrator, Catherine Allin, answered the inmate request. (Exhibit I at I1 ¶ 3, I4)  Ms. Allin informed Plaintiff that his record did not indicate any previous complaints.  (Exhibit I at I2 ¶ 3, I4)  She also instructed Plaintiff to submit a sick-call request for medical attention.  (Id.)

16.  Plaintiff was transferred from Union C.I. to Santa Rosa C.I. on February 13, 2009 and was examined by medical staff.  (Exhibit J at J1 ¶ 3, J6, J7)  On February 24, 2010, ARNP Nichols attempted to examine Plaintiff for a pass evaluation however, Plaintiff refused to come out to sick-call. (Exhibit J at J1 ¶ 3, J2 ¶ 3, J8, J11)  On February 24, 2009, Plaintiff filed a formal grievance; log number 0902-119-415, requesting his passes

---

[3] In Dr. Aviles's response to Plaintiff's grievance on February 6, 2010 it states "QM" advisor. This is a typographical error and should state: "UM" advisor. (Exhibit G at G4 ¶ 12, G26 )

be renewed. (Exhibit K at K2 ¶ 3, K7, K13)  He also stated that he had a valid wheelchair pass. (Exhibit K at K2 ¶ 3, K13)  Dr. Collins responded to Plaintiff stating that there was no documentation in his medical record indicating that he could not walk and that as he was instructed by the ARNP, he would have to go to sick-call to obtain his restrictive passes.  (Exhibit K at K14)  On March 2, 2009 Plaintiff signed up for sick-call, but refused to come out to medical for his pass evaluation. (Exhibit J at J2 ¶ 3, J9, J12)

17.  On March 3, 2009, ARNP Nichols examined Plaintiff to conduct a pass evaluation.  (Exhibit J at J2 ¶ 4, J13)  ARNP Nichols examined Plaintiff and noted in Plaintiff's medical record that Plaintiff did not exhibit any muscle atrophy in the leg complained of.  (Id.)  ARNP Nichols issued a pass for the use of a cane outside of his cell and for front-side cuffing when using his cane.  (Exhibit J at J2 ¶ 4, J13)  She also issued a pass for low bunk placement.  (Id.)

18. On March 10, 2009, ARNP prescribed Plaintiff Motrin 600mg to be taken twice a day for 90 days. (Exhibit J at J2 ¶ 5, J34)  Motrin is a non-steroidal anti-inflammatory drug used to treat inflammation and is typically prescribed for pain. (Exhibit J at J2 ¶ 5) Plaintiff's prescription for the same was renewed on May 26, 2009.  (Id.)

19.  On March 18, 2009, Plaintiff resubmitted a formal grievance, log number 0903-119-291, requesting his passes be re-issued. (Exhibit K at K3 ¶ 6, K17-20)  Dr. Collins responded to Plaintiff reminding him that he was evaluated by the ARNP on March 3, 2009 and that his pass for low bunk, front cuff, and cane pass out of cell were all renewed.  (Exhibit K at K3 ¶ 6, K18)

20.  On March 30, 2009, Plaintiff filed an inmate request stating that he was in pain and that the Ibuprofen prescribed at sick-call was "not working."  (Exhibit J at J2 ¶ 6, J35) He also requested a "comprehensive nerve test."  (Id.)  ARNP Nichols responded to Plaintiff's request on March 30, 2009 and advised him that he had been examined and tested for his complaints.  (Exhibit J at J3 ¶ 6, J35)  ARNP Nichols advised Plaintiff that the appropriate medication for his condition was non-steroidal anti-inflammatory drugs ("NSAIDS") or Tylenol. (Id.)

21. Dr. Collins left the employ of the Florida Department of Corrections on April 2, 2009.  (Exhibit K at K4 ¶ 8)

22.  ARNP Nichols examined Plaintiff again on August 11, 2009 to evaluate his passes.  (Exhibit J at J3 ¶ 7, J20)  Plaintiff stated he was able to walk on his leg, however, that it hurt and he would not subject himself to pain. (Id.)  As a result of Plaintiff's statement, ARNP's physical examination of Plaintiff, and security concerns, ARNP Nichols changed Plaintiff's pass to outside dorm use only.  (Exhibit J at J3 ¶ 7, J20)

23.  Recently, Plaintiff has been permitted to use his cane outside of his cell within the dorm.  (Exhibit J at J4 ¶ 8)  Also, to date, Plaintiff's prescription for Motrin 600mg has been consistently renewed.  (Exhibit J at J4 ¶ 8, J36) Plaintiff's medical record demonstrates that he has recently had issues with hoarding and trading pills,[4] he has

---

[4] Plaintiff has been caught hoarding pills on two separate occasions and trading pills on one occasion.  (Exhibit J at J4 ¶ 8, J24, J26)

10

exhibited behavior demonstrating that he does not suffer from debilitating back pain,[5] and

he has misrepresented physical symptoms to medical staff.[6]

## MEMORANDUM OF LAW

### I.  Defendants Are Entitled to Summary Judgment.

Summary judgment is proper if the pleadings and sworn statements show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corporation v. Catrett, 477

U.S. 317, 322-23 (1986).  The party moving for summary judgment bears the initial

burden of demonstrating an absence of evidence to support the nonmoving party's case.

Celotex, 477 U.S. at 323.  Upon meeting this burden, the burden shifts to the nonmoving

party to present evidentiary material demonstrating that a genuine issue of material fact

exists.  Id. at 324.

Applicable substantive law identifies those facts that are "material."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual issues must have a real basis in

the record to be considered genuine and the nonmoving party must show more than a

---

[5] Plaintiff has been seen walking around in his cell without the use of cane and without
any apparent struggle. (Exhibit J at J4 ¶ 8, J27)  Plaintiff has also been given an analgesic
balm to help relieve his alleged back pain and during an examination it was determined
that Plaintiff was not using it. (Id.)

[6] On December 2, 2009, Plaintiff claims he slipped and fell in water in his cell. However,
a witness to the incident provided a witness statement to the on-duty correctional officer
stating that the Plaintiff threw the water in his own cell and placed himself in the puddle
of water.  (Exhibit J at J4 ¶ 8, J37, J38)  Nonetheless, as indicated in his medical record,
Plaintiff was taken to medical with complaints of back pain and stating he could not
walk.  He was examined by Nurse Donahoo and kept for observation.  Fifteen minutes
after being examined, Nurse Donahoo observed on camera Plaintiff exhibiting full range
of motion, "moving, bending, twisting at the waist, arching back", with no signs of
restricted movement. (Exhibit J at J4 ¶ 8, J23)

"metaphysical doubt" regarding the material facts.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are "implausible."  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).   "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U. S. 372, 380 (2007).  A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252; see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . .").   In other words, summary judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.[7]

---

[7] As recently stated by the Supreme Court, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

Under the facts of this case, there is no evidence to support Plaintiff's allegations of an Eight Amendment violation.

## II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), Title 42 U.S.C. §1997e, provides in relevant part: "No action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion of all available administrative remedies is mandatory, and is a pre-condition to suit. Booth v. Churner, 532 U.S. 731, 739 (2001); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000); Poole v. Rich, 312 Fed. Appx. 165, 167 (11th Cir. 2008).

The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is required regardless of the type of remedy sought by the plaintiff. Booth v. Churner, 532 U.S. 731, 739 (2001). As the United States Supreme Court has held, the PLRA requires "proper exhaustion," so that the agency may address the issues on the merits. Woodford v. Ngo, 548 U.S. 81, 84 (2006). The Court further explained that: "[T]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have

such an opportunity unless the grievant complies with the system's critical procedural rules." Id. at 95.

Moreover, unless there is a sanction for noncompliance, a prisoner will have little incentive to comply with the agency's rules. Id. The exhaustion requirement is not satisfied by the prisoner filing an untimely or otherwise procedurally defective administrative grievance or appeal. Id. at 90-91.   In Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1988), the Eleventh Circuit noted that one of the policy reasons favoring exhaustion was: "'. . . to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" quoting Kobleur v. Group Hospitalization & Medical Services, Inc., 954 F.2d 705, 712 (11th Cir.1992).

The normal procedures for inmate grievances are set out at Florida Administrative Code ("F.A.C.") §33-103.005, for informal grievances, and F.A.C. §33-103.006, for formal grievances. Grievances are only meant to address one issue or complaint. F.A.C. §33-103.005(2)(b)(2); F.A.C. §33-103.006(2)(f). Appeals and direct grievances to the Office of the Secretary are addressed at F.A.C. §33-103.007. The time frames for grievances are set forth in F.A.C. §33-103.011. An inmate is required to initially utilize the informal grievance process before initiating a formal grievance. F.A.C. §33-103.005(1).

Review of Plaintiff's administrative grievances demonstrates that he has failed to exhaust administrative remedies with regard to his Eighth Amendment claims against Dr. Lord (Orthopedic Surgeon) and Ms. Allin (Senior Health Services Administrator).

14

(Exhibits F at F38, F39, G at G26, G27, K at K17-K20)  Plaintiff is not required to specifically name the particular defendant, however, at the very least; Plaintiff must identify in his grievances the course of treatment he believes was constitutionally deficient.  Jones v. Bock, 549 U.S. 199, 217 -18 (2007).  At no point in the grievance process does Plaintiff make any allegations against Dr. Lord or the course of treatment provided by Dr. Lord.  (Exhibits F at F38, F39, G at G26, G27, K at K17-K20)  Plaintiff also does not make any allegations against Ms. Allin or refer to the response he addresses in his complaint in any administrative grievances.  (Id.)  Accordingly, Plaintiff's claims against Dr. Lord and Ms. Allin should be dismissed due to Plaintiff's failure to exhaust administrative remedies.   Should the Court determine that Plaintiff did exhaust his administrative remedies with regard to these Defendants, Plaintiff's claims against the same are addressed in Section III.

### III.  Plaintiff Fails to Establish a Violation of the Eighth Amendment.

The complaint alleges that Plaintiff was denied adequate medical treatment by Defendants assigned with Plaintiff's care. (Doc. 1, Section V.)  It is well settled that federal and state governments have a constitutional duty to "provide minimally adequate medical care to those whom they are punishing by incarceration." Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing medical treatment acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000); McElligott v. Foley, 182 F.3d 1248, 1254

(11th Cir. 1999); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). A finding of deliberate indifference contains both an objective and subjective component. Taylor, 221 F.3d at 1257.

The objective component has two subsidiary requirements. Taylor, 221 F.3d at 1258. First, Plaintiff must demonstrate an objectively serious medical need. Estelle, 429 U.S. at 104. A serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009). Also, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, the plaintiff must show that the prison official's response to the need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-106; See also Taylor, 221 F.3d at 1258. However, "[t]he inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." Farrow, 320 F.3d at 1243 (internal quotations and citations omitted).

The subjective component requires the plaintiff to demonstrate that the prison official acted with "deliberate indifference." Estelle, 429 U.S. at 105. Deliberate indifference has three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245-46 (11th Cir. 2003)(citing McElliogott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that Defendant must have subjective

16

awareness of an "objectively serious need"  and that his response must constitute "an objectively insufficient response to that need")).

In his complaint, Plaintiff alleges Defendants' were deliberately indifferent to his alleged back condition, by either, denying him treatment, delaying his treatment, or denying him stronger medication when requested by him. (Doc. 1, Section V.) However, Plaintiff has failed to support his claim of deliberate indifference with the requisite objective and subjective components. Even liberally construed, the compliant fails to allege or demonstrate that the Defendants' medical decisions and treatment constituted deliberate indifference to Plaintiff's medical care in violation of the Eighth Amendment.  At most, Plaintiff's allegations amount to a difference in opinion regarding the most effective treatment for his condition.

### A.  Analysis of Deliberate Indifference Claim Against Doctor Andem.

#### i.  *Plaintiff fails to meet the required objective component.*

At all times examined by Dr. Andem, Plaintiff did not demonstrate a "serious medical need" nor can Dr. Andem's response(s) to Plaintiff's medical need be described as "an unnecessary and wanton infliction of pain."  <u>Estelle</u>, 429 U.S. at 104 -105.  Upon Dr. Andem's examination of Plaintiff on May 6, 2008, Dr. Andem noted that although Plaintiff complained of debilitating back pain, he was able to: "1) sit up on the bed without aid, 2) get out of the bed without aid, and 3) walk using a walker."  (Exhibit F at F2 ¶ 5, F29)  Following that examination and as requested by Plaintiff through a sick-call request, Dr. Andem ordered an x-ray of Plaintiff's lumbar spine to confirm that Plaintiff

had not sustained any damage.  (Id.)  The findings of the x-ray reflected a normal study

with no damage or injury to Plaintiff's spine.  (Exhibit F at F2 ¶ 6, F3 ¶ 6, F36)  As such,

and as indicated by the medical record, Plaintiff's objective symptoms did not

demonstrate a "serious medical need." [8]

Even assuming Plaintiff's back pain was considered a serious medical need; Dr.

Andem's treatment was hardly deficient as to constitute an "unnecessary and wanton

infliction of pain."  Taylor, 221 F.3d at 1258.  Rather, the record reflects that Dr. Andem

thoroughly examined Plaintiff and prescribed pain medication (Motrin 800mg; Anaprox

DS 550mg) as necessary, and as consistent with Plaintiff's objective data with every

intention to assist Plaintiff with his alleged back pain.  (Exhibit F at F2 ¶ 5, F27, F29)

While Plaintiff wanted stronger pain medication, Dr. Andem could not justify a medical

reason to prescribe such because of the discrepancy between Plaintiff's subjective

symptoms and his objective examinations.  (Exhibit F at F4 ¶ 8)  However, because of

Plaintiff's insistence that he was in pain, Dr. Andem requested an orthopedic consult as a

step towards determining the source, if any, of Plaintiff's alleged pain.  (Exhibit F at F3 ¶

---

[8]  There are a range of medical needs that are sufficiently serious to constitute "serious medical needs" for purposes of the Eighth Amendment and some medical needs that are not.  Farrow, 320 F.3d at 1243 n.14 (citing Adams v. Poag, 61 F.3d 1537, 1539-41, 1543 (11th Cir.1995) (asthma, with continual breathing problems and with intermittent wheezing, coughing, and hyperventilating, can constitute a serious medical need), and Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir.1990) (painful broken foot can be serious medical need), and Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989) (evidence showing that plaintiff's leg collapsed under him, was deteriorating, caused pain when moved, and that he was virtually unable to walk, supported jury's conclusion that plaintiff had serious medical need), and Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985) (one-and-a-half-inch cut over detainee's eye bleeding for two and a half hours was a serious medical need)).

18

7, F4 ¶ 7)  Plaintiff was promptly and properly cared for during his interactions with Dr. Andem.  (Exhibit F)  Dr. Andem provided Plaintiff with medication for his back pain and a front-side cuffing pass when Plaintiff complained of shoulder pain.  (Exhibit F at F4 ¶ 8, F12, F27)  As the medical records[9] demonstrate, Plaintiff's care was so prompt and appropriate that Plaintiff cannot even show negligence, much less "wanton infliction of pain."

### ii.   *Plaintiff fails to meet the required subjective component*

As to the subjective component, Plaintiff cannot demonstrate that Dr. Andem knew of and disregarded an excessive risk to Plaintiff's health.  (Doc.1)  In fact, the record of health care supports the opposite conclusion. (Exhibit F)  Dr. Andem took every step necessary to assess and prevent any future risk to Plaintiff's condition, even when the Plaintiff's subjective complaints did not correlate with Dr. Andem's objective findings.  (Id.)  Dr. Andem ruled out any risks to the Plaintiff's back by ordering an x-ray on Plaintiff's lumbar spine and initiating a consult with the Orthopedic Surgeon.  (Exhibit F at F2 ¶ 5, F3 ¶ 7, F29, F40)  While Plaintiff alleges that Dr. Andem "prolonged" Plaintiff's visit to the Orthopedic Surgeon, Plaintiff's consult with the Orthopedic Surgeon was requested more as a cautionary measure and not because Dr. Andem, who had examined Plaintiff several times, believed it was medically necessary. Further, in

---

[9] In determining whether a prisoner has received adequate medical treatment, the federal court is entitled to rely on the physician's affidavit and prison medical records kept in the ordinary course of operation. <u>Stokes v. Hurdle</u>, 393 F.Supp. 757, 762-63 (D.C.Md. 1975). In short, if it appears from the record that the prison medical authorities have made a sincere and reasonable effort to handle the prisoner's medical problems, the constitutional requirements have been met.  <u>Stokes</u>, 393 F. Supp., at 763.

Hunt v. Uphoff, 199 F.3d 1220 (1999), the court noted that "[d]elays that courts have found to violate the Eighth Amendment have frequently involved life threatening situation and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." Hunt, 199 F.3d at 1224. The court also went on to say that "[o]fficials may also be held liable when the delay results in a lifelong handicap or a permanent loss." (Id.). Plaintiff's medical records and the diagnosis reached by each Defendant, including the Orthopedic Surgeon, do not demonstrate that Plaintiff's medical condition is or was one that required even more prompt attention than that given by Dr. Andem. (See infra Section III, F, G, H, J, K) Any possible "delay" Plaintiff experienced in being examined by the Orthopedic Surgeon did not exacerbate his alleged condition. (Id.) The medical records and attached affidavit support that the actions taken by Doctor Andem; both independently and collectively, did not amount to deliberate indifference to Plaintiff's medical needs. Accordingly, Plaintiff's claim for the same should be denied.

### B. Analysis of Deliberate Indifference Claim Against Dr. Lord.

#### i. Plaintiff fails to meet the required objective component.

At all times examined by Dr. Lord, Plaintiff did not demonstrate a "serious medical need" nor can Dr. Lord's response(s) to Plaintiff's medical need be described as "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 -105. Upon Dr. Lord's first examination of Plaintiff, Dr. Lord noted that Plaintiff exhibited poor volitional effort, which appeared to be more due to a lack of effort rather than a medical problem (Exhibit H at H2 ¶ 4, H6). Dr. Lord also noted that Plaintiff's suggested symptoms did not correlate with a known nerve pattern, which led Dr. Lord to conclude

that Plaintiff was malingering as he was exhibiting abnormalities that were not actually present.   (Id.)  However, despite this opinion, Dr. Lord requested a MRI examination to rule out any nerve damage to Plaintiff's spine.   (Id.)   The MRI exam showed mild degenerative changes. Plaintiff's second examination with Dr. Lord confirmed that Plaintiff was malingering as Plaintiff exhibited symptoms which were significantly out of proportion to the MRI findings and Plaintiff's alleged loss of sensation did not follow a normal distribution of a pinch nerve in the back.  (Exhibit H at H3 ¶ 6, H9)  As such, and as indicated by the medical record, Plaintiff's objective symptoms did not demonstrate a "serious medical need." [10]

Even assuming Plaintiff's exhibited symptoms of a serious medical need, Doctor Lord's course of care and treatment do not constitute an "unnecessary and wanton infliction of pain." Taylor, 221 F.3d at 1258.  On the contrary, the record reflects that Dr. Lord examined Plaintiff thoroughly on both occasions and took every step to properly care for and assist Plaintiff with pain management.   (Exhibit H)   Dr. Lord, despite thinking that Plaintiff was exaggerating his symptoms, recommended restrictive passes which limited the time Plaintiff was required to stand or walk, allowed Plaintiff the use of a cane, and assigned Plaintiff a low bunk.  (Exhibit H at H2 ¶ 4, H6)  All of which were recommended so that Plaintiff would not be subject to discomfort if he was truly experiencing pain and the degree of pain alleged.   Following the results of the MRI, which showed only mild degenerative changes, and an examination demonstrating that Plaintiff's symptoms were out of proportion to this MRI finding, Dr. Lord still suggested

---

[10] See supra FN8.

a series of epidural injections in an abundance of caution based upon Plaintiff's continued subjective complaints of pain. (Exhibit H at H3 ¶ 6, H9)   As the medical records demonstrate, the care Plaintiff received from Dr. Lord was so comprehensive that Plaintiff cannot even show negligence, much less "wanton infliction of pain."

### ii.   *Plaintiff fails to meet the required subjective component*

As to the subjective component, Plaintiff cannot demonstrate that Dr. Lord knew of and disregarded an excessive risk to Plaintiff's health.  (Doc.1)   Dr. Lord, on the contrary, took the necessary steps in diagnosing Plaintiff's condition despite Plaintiff's exhibition of signs of malingering.  (Exhibit H)  Dr. Lord requested a MRI examination to rule out nerve damage and recommended restrictive passes pending the results of the MRI to limit the chance of Plaintiff exacerbating his alleged condition.  (Exhibit H at H2 ¶ 4, H6)  As supported by the medical records and attached affidavit, the actions taken by Dr. Lord, both independently and collectively, did not amount to deliberate indifference to Plaintiff's medical needs.   Accordingly, Plaintiff's claim for the same should be denied.

### C.  Analysis of Deliberate Indifference Claim Against Doctor Aviles.

### i.   *Plaintiff fails to meet the required objective component.*

At all times examined by Dr. Aviles, Plaintiff did not demonstrate a "serious medical need" nor can Dr. Aviles's response(s) to Plaintiff's medical need be described as "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104 -105.  Upon Dr. Aviles's first examination of Plaintiff, Dr. Aviles noted that Plaintiff had a limited gait and authorized a wheelchair pass for long distances, a cane pass for ambulation, a

pass for restricting the amount of time Plaintiff was allowed to stand, and a back brace for support of the spine.  (Exhibit G at G2 ¶ 7, G10)  Dr. Aviles also prescribed Naproxen 500mg, an anti-inflammatory pain medication, for six months.  (Id.)  Following this examination and as requested by Dr. Lord, the medical unit at Union C.I. coordinated a MRI examination for the Plaintiff.   (Exhibit G at G2 ¶ 5)  The findings of the MRI, as characterized by the orthopedic specialist, were mild degenerative changes.  (Exhibit G at G4 ¶ 11, G19, G25)   Despite these findings, the medical unit, under Dr. Aviles's direction, requested the spinal injections from UM.  (Exhibit G at G3 ¶ 9, G14)  The injections were subsequently denied by UM due to: "1) poor effort of the inmate during examination by the orthopedic (Dr. Lord), 2) MRI minimal findings (degen. changes), and 3) subjective symptoms exceed objective signs." [11] (Exhibit G at G4 ¶ 11, G19, G25) As such, and as indicated by the medical record, Plaintiff's objective symptoms did not demonstrate a "serious medical need." [12]

Assuming, *arguendo,* that Plaintiff was experiencing pain that would qualify as a serious medical need, Dr. Aviles's prompt and conscientious course of treatment, does not amount to an "unnecessary and wanton infliction of pain."  Taylor, 221 F.3d at 1258. The history of medical care demonstrates that Dr. Aviles and his staff examined Plaintiff on several occasions and prescribed pain medication (Naproxen500mg) as necessary, and as consistent with Plaintiff's objective data with every intention to assist Plaintiff with his

---

[11] The basis provided by UM for denying treatment was based on the findings of Dr. Lord (Orthopedic Surgeon) during Plaintiff's consultation on October 15, 2008. (Exhibit G at G25)

[12] See supra FN8.

alleged pain. (Exhibit G)  While Plaintiff wanted stronger pain medication, the results of Plaintiff's x-ray, MRI and physical examinations by all treating physicians did not merit the prescribing of anything stronger.  (Exhibit G at G5 ¶ 15)  Plaintiff was promptly and properly cared for during his interactions with Dr. Aviles and his staff.  (Exhibit G)  He received medication and restrictive passes which exempted him from most required activities and prolonged walking or standing.  (Exhibit G at G2 ¶ 7) Further, upon Plaintiff's request, Dr. Aviles even referred Plaintiff to the impair committee for an institutional transfer to a wheelchair camp.  (Exhibit G at G4 ¶ 13, G19)  As the medical records demonstrate, Plaintiff's care was so prompt and appropriate that Plaintiff cannot even show negligence, much less "wanton infliction of pain."

### ii.   *Plaintiff fails to meet the required subjective component*

As to the subjective component, Plaintiff cannot demonstrate that Dr. Aviles knew of and disregarded an excessive risk to Plaintiff's health.  Again, the record of health care supports the opposite conclusion.  (Exhibit G)  Dr. Aviles and his staff took every step necessary to assess and prevent any future risk to Plaintiff's condition, even when the Plaintiff's subjective complaints did not correlate with Dr. Aviles's objective findings.  (Id.)  Dr. Aviles ruled out any risks to the Plaintiff by coordinating the MRI examination recommended by the orthopedic surgeon, the follow-up consult with the orthopedic surgeon, and requesting the recommended spinal injections.  (Exhibit G at G2, G3)  As supported by the medical records and attached affidavit, the actions taken by Dr. Aviles, both independently and collectively, did not amount to deliberate indifference to Plaintiff's medical needs.  Accordingly, Plaintiff's claim for the same should be denied.

### D.  Analysis of Deliberate Indifference Claim Against Ms Allin.

#### i.   *Plaintiff fails to meet the required objective component.*

Plaintiff's inmate request to Ms. Allin did not demonstrate a "serious medical need" nor can Ms. Allin's response to Plaintiff's inmate request be described as "an unnecessary and wanton infliction of pain."   Estelle, 429 U.S at 104 -105.    Upon receiving Plaintiff's February 2, 2009 inmate request, wherein Plaintiff complained of extreme pain in his spine and leg and that he was beginning to experience numbness and pain in his arms, Ms. Allin reviewed Plaintiff's medical record.  (Exhibit I at I2 ¶ 3)  Ms. Allin noticed that Plaintiff had not complained of numbness and pain in his arms before and that his complaints of pain in his spine and leg had already been addressed by Nurse Bickel and the Chief Health Officer of the Institution. (Exhibit I at I2 ¶ 3, I5, I6) Accordingly, the symptoms complained of by Plaintiff did not demonstrate a "serious medical need,"[13]  as he had not addressed complaints of pain or numbness in his arm previously, and the other complaints had already been addressed by medical staff.  (Id.)

However, even assuming Plaintiff's complaints were considered a "serious medical need," Ms. Allin's response to Plaintiff's request did not amount to "unnecessary and wanton infliction of pain."  Taylor, 221 F.3d at 1258.  First, Ms. Allin stated in her response to Plaintiff's request, that there was no record of him addressing these complaints previously.  (Exhibit I at I2 ¶ 3, I4)   Ms. Allin was referring to Plaintiff's complaints of numbness and pain in his arms.  (Exhibit I at I2 ¶ 3)  Second, Ms. Allin informed Plaintiff that he must address his complaints in a sick-call request. (Id.)  An

---

[13] See supra FN8.

25

inmate request is not the proper procedure to seek medical attention; rather an inmate must fill out an Inmate Sick-Call Request Form in order to be seen by medical staff. (Id.) As such, Ms. Allin simply instructed Plaintiff of Department policy and encouraged him to seek relief for all of his complaints through the proper procedure.  (Id.)  The response issued by Ms. Allin was in conformity with Department rules and not "wanton infliction of pain."

### ii.   Plaintiff fails to meet the required subjective component

As to the subjective component, Plaintiff cannot demonstrate that Ms. Allin knew of and disregarded an excessive risk to Plaintiff's health.  (Doc.1)  As noted above, Ms. Allin did not disregard Plaintiff's complaints, rather, simply directed him to the proper forum for seeking medical attention.  (Exhibit I at I2 ¶ 3, I4) Further, the record indicates that Plaintiff had not previously complained of pain or numbness in his arm, and that his complaints of pain in his spine and legs had already been evaluated by medical staff. (Exhibit I at I2 ¶ 3, I5, I6)  Nothing in the record indicated that Plaintiff's alleged symptoms or condition would worsen if Plaintiff was made to go through the proper channels to seek medical attention. (Id.) The actions taken by Ms. Allin in responding to Plaintiff's request were appropriate and did not amount to deliberate indifference to Plaintiff's medical needs.  Accordingly, Plaintiff's claim for the same should be denied.

### E.   Analysis of Deliberate Indifference Claim Against ARNP Nichols.

### i.   Plaintiff fails to meet the required objective component.

At all times examined by ARNP Nichols, Plaintiff did not demonstrate a "serious medical need" nor can ARNP Nichols's response(s) to Plaintiff's medical need be

described as "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 - 105.  After several instances of Plaintiff refusing to come out of his cell to be examined by medical staff, ARNP Nichols was able to examine Plaintiff on March 3, 2009, and noted that Plaintiff made no attempt to walk.  (Exhibit J at J1 ¶ 3, J2 ¶ 3, J2 ¶ 4, J8, J11, J12, J13)  She also noted that Plaintiff did not exhibit any muscle atrophy in the leg complained of.  (Exhibit J at J2 ¶ 4)  Patients who are unable to place weight on a leg for long periods of time usually have some degree of muscle atrophy. (Id.)  Review of Plaintiff's medical file revealed to the ARNP that Plaintiff had received an x-ray, a MRI, and had been evaluated by the orthopedic surgeon prior to being transferred to Santa Rosa C.I. (Exhibit J at J2 ¶ 6)  On August 11, 2009, ARNP Nichols examined Plaintiff again to evaluate his passes.  (Exhibit J at J3 ¶ 7, J20) During that visit, Plaintiff advised her that he was able to walk on his leg, however, that doing so was painful and he would not subject himself to pain.  (Id.)  Accordingly, based on the information obtained from Plaintiff, the medical record available to ANRP Nichols, and the objective findings of her examination of Plaintiff, he did not demonstrate a "serious medical need." [14]

Even assuming Plaintiff's back pain was considered a serious medical need; ARNP Nichols's treatment was hardly deficient as to constitute an "unnecessary and wanton infliction of pain."  Taylor, 221 F.3d at 1258.  Rather, the record reflects that ARNP Nichols examined Plaintiff on several occasions, prescribed pain medication (Motrin 600mg) as consistent with Plaintiff's objective data, and issued restrictive passes.  (Exhibit J)  ARNP Nichols, despite not seeing any indication that Plaintiff was unable to

---

[14] See supra FN8.

walk without the use of the cane, provided Plaintiff with a cane pass because of his insistence that he was unable to put pressure on his leg.  (Exhibit J at J2 ¶ 4, J13)  ARNP also ensured that Plaintiff had a low-bunk pass and a pass for front side cuffing.  (Id.)  Contrary to Plaintiff's allegation, ARNP Nichols did not take away his cane pass.  (Doc. 1, Section. V., p.14)  On August 11, 2009, after examining Plaintiff and him admitting that he was able to walk without the use of the cane, ARNP Nichols *changed* Plaintiff's cane pass from outside cell use to outside dorm use.  (Exhibit J at J3 ¶ 7, J20)  ARNP Nichols notes that Plaintiff is assigned to a Close Management[15] ("CM") dormitory.  (Exhibit J at J3 ¶ 7)  When inmates are housed in CM, medical equipment that can be used as a weapon, such as a cane, is only authorized when completely necessary.[16]  Therefore, as a result of Plaintiff's statement that he was able to walk without the use of a cane, the ARNP's objective findings after examining Plaintiff, and existing security concerns; Plaintiff's pass was changed to cane use outside of the CM dormitory only.  (Id.)

---

[15] Close management ("CM") is the "confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Rule 33-601.800(1)(d), Fla. Admin. Code ("F.A.C.").  There are three individual levels (CM I, CM II, and CM III) associated with  close management, with CM I being the most restrictive single cell housing level and CM III being the least restrictive housing of the three CM levels.  Rule 33-601.800(1)(e), F.A.C.  Unlike disciplinary confinement, CM is not punishment, but rather a housing assignment used by the Department to ensure the safety and security of the institution. Plaintiff has been assigned to CMII status since May 13, 2008.

[16] Plaintiff has used his cane in the past to strike a correctional officer and was found guilty of the disciplinary infraction aggravated assault and battery on a correctional officer for doing so. (Exhibit B)

ARNP Nichols notes that while Plaintiff continues to state that he needs stronger pain medication, the objective findings of his examinations and information in his medical file does not merit stronger pain medication. (Exhibit J at J4 ¶ 8)  ARNP Nichols and the medical record both indicate that Plaintiff has recently had issues with hoarding and trading pills,[17] which pose security concerns.  (Id.) ARNP Nichols states that based on the physical examination of Plaintiff, his medical records, and his behavior,[18] which includes a recent incident at the Institution,[19] Plaintiff is malingering and prescription of anything stronger than Motrin 600mg is unnecessary.  (Id.)  Accordingly, the medical records demonstrate that Plaintiff has received appropriate care and ARNP Nichols's course of treatment did not constitute "wanton infliction of pain."

### ii.   Plaintiff fails to meet the required subjective component

As to the subjective component, Plaintiff cannot demonstrate that ARNP Nichols knew of and disregarded an excessive risk to Plaintiff's health.  Plaintiff's medical record indicates that despite ARNP Nichols's determination that Plaintiff was malingering, she took the necessary precautions to ensure that Plaintiff would not be at risk by authorizing restrictive passes and prescribing anti-inflammatory medication should he actually be experiencing discomfort.  (Exhibit J)  The actions taken by ARNP Nichols, both independently and collectively, did not amount to deliberate indifference to Plaintiff's medical needs.  Accordingly, Plaintiff's claim for the same should be denied.

---

[17] See supra FN 4.
[18] See supra FN 5.
[19] See supra FN 6.

### F.  Analysis of Deliberate Indifference Claim Against Dr. Collins.

#### i.  *Plaintiff fails to meet the required objective component.*

During Dr. Collins's limited interaction with Plaintiff's formal grievances and medical file, Plaintiff did not demonstrate a "serious medical need" nor can Dr. Collins's response(s) to Plaintiff's medical need be described as "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104 -105.  Upon arriving at Santa Rosa C.I., Plaintiff filed a formal grievance seeking the renewal of his restrictive passes, including one he had for the use of a wheelchair.  (Exhibit K at K2 ¶3, K7, K13)  Dr. Collins answered the grievance stating that Plaintiff's medical file did not indicate that Plaintiff was unable to walk and that as the ARNP had already instructed Plaintiff, he would have to go to sick-call to obtain restrictive passes.  (Exhibit K at K2 ¶3, K13)  Plaintiff's subsequent grievance, dated March 18, 2009, was received and answered by Dr. Collins, and also addressed Plaintiff's pass renewal.  (Exhibit K at K2 ¶6, K17-20)  Dr. Collins informed Plaintiff that he had already been evaluated by the ARNP and that the appropriate passes had been issued.   (Exhibit K at K2 ¶6, K18)  As Plaintiff only complained of restrictive passes in these grievances and Plaintiff had in fact received the appropriate passes, Plaintiff did not demonstrate a "serious medical need."[20]

Even assuming Dr. Collins knew or should have known about Plaintiff's alleged back pain or that Plaintiff back pain was considered a serious medical need, Dr. Collins's responses to Plaintiff's grievances were hardly deficient as to constitute an "unnecessary and wanton infliction of pain."  Taylor, 221 F.3d at 1258.  Dr. Collins

---

[20] See supra FN8.

answered Plaintiff's grievances by informing Plaintiff of the appropriate steps to take in order to receive his restrictive passes.  (Exhibit K at K3 ¶ 7)  Further, Dr. Collins was as Santa Rosa C.I. for less than two months while Plaintiff was there and although Dr. Collins never examined Plaintiff, Plaintiff received medical attention, in the form of restrictive passes and pain medication pursuant to Department procedure.  (Exhibit K) That is, an ARNP is authorized to examine and treat inmates to the extent of their professional abilities.  (Exhibit K at K2 ¶4)  If an inmate exhibits a condition which is outside of the expertise of the ARNP he/she would then refer the inmate to a doctor for treatment.  (Id.)  In his case, ARNP Nichols was able to treat Plaintiff and therefore, Plaintiff was never referred to Dr. Collins for examination.  (Id.)  As the medical records demonstrate, the responses by Dr. Collins do not amount to "wanton infliction of pain."

### ii.   Plaintiff fails to meet the required subjective component

As to the subjective component, Plaintiff cannot demonstrate that Dr. Collins knew of and disregarded an excessive risk to Plaintiff's health.  (Doc.1)  On the contrary, upon answering Plaintiff's formal grievances, Dr. Collins reviewed Plaintiff's medical record and noted that prior to being transferred to Santa Rosa C.I., Plaintiff received a thorough examination of his back pain complaints including: x-rays, a MRI, and two consults with the Orthopedic Surgeon. (Exhibit K at K4 ¶ 9)  Therefore, based on Plaintiff's medical records and the objective findings of the Orthopedic Surgeon, there was nothing in the record to indicate that Plaintiff's health was being placed at risk.  (Id.) As supported by the medical records and attached affidavit, the actions taken by Dr.

Collins, both independently and collectively, did not amount to deliberate indifference to Plaintiff's medical needs.  Accordingly, Plaintiff's claim for the same should be denied.

### G. Analysis of Deliberate Indifference Claim Against all Defendants regarding pain medication.

Plaintiff does not, at any time in his complaint, allege that he has not received pain medication from Dr. Andem, Dr. Aviles, and ARNP Nichols, rather, that the pain medication prescribed, is not "effective."  In other words, Plaintiff is dissatisfied with the course of treatment prescribed by the aforementioned Defendants.  However, an inmate's desire for a different mode of treatment does not amount to deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).  Also, "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989); See also Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.").  Additionally, even assuming Plaintiff has been "misdiagnosed" or given the "wrong medication," which there is no evidence supporting the same, at the very most, Plaintiff would have a claim for medical malpractice, which does not amount to a constitutional violation.  Estelle, 429 U.S. at 106.

Even though Plaintiff is convinced he has not been receiving "effective" or "adequate" treatment, he has been prescribed pain medication which has been deemed adequate by five medical professionals.  (Exhibit F at F4 ¶8, Exhibit G at G5 ¶ 15,

Exhibit H at H3 ¶8, Exhibit J at J4 ¶8, Exhibit K at K4 ¶9) Plaintiff's claim essentially boils down Plaintiff's "medical opinion" as to the proper course of treatment versus the treatment indicated as medically necessary by five medical professionals.  Whether or not Plaintiff should be prescribed stronger pain medication is a matter of medical judgment and not appropriate for an Eighth Amendment claim.  <u>Adams</u>, 61 F.3d 1537, 1545. Furthermore, Dr. Andem, Dr. Lord, Dr. Andem, ARNP Nichols, and Dr. Collins all determined, based on the objective findings of Plaintiff's examinations and in most cases, Plaintiff's x-rays and MRI, that the Anaprox, Naproxyn, and Motrin were all adequate medication to treat Plaintiff's condition and anything stronger, such as a narcotic, would be unnecessary. (Exhibit F at F4 ¶8, Exhibit G at G5 ¶ 15, Exhibit H at H3 ¶8, Exhibit J at J4 ¶8. Exhibit K at K4 ¶9) Based on Plaintiff's medical record, physical examinations, and tests administered, it is the medical opinion of Dr. Andem, Dr. Aviles, Dr. Lord, Dr. Collins, and ARNP Nichols that Plaintiff's current course of treatment is proper.  (<u>Id.</u>)

**IV. Qualified Immunity**

To the extent the Plaintiff is suing Defendants in their individual capacity for damages; Defendants assert qualified immunity to not stand trial or face the other burdens of litigation on the claims raised by the Plaintiff.  Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, and protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(quoting <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir 2001)).  It operates to protect officials from the sometimes hazy border between

constitutional and unconstitutional conduct, and to ensure that before they are subject to suit, officials are on notice that their conduct is unlawful.  Saucier v. Katz, 533 U.S. 194, 206 (2001).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular  conduct."  Id. at 205.

Until recently, the Eleventh Circuit utilized a mandatory two-step sequence for resolving government officials' qualified immunity claims under controlling Supreme Court precedent.  See Saucier v. Katz, 533 U.S. 194, 210 (2001); see also Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).  Under Saucier, courts had to first make a determination as to whether the facts that the plaintiff alleged constituted a violation of a constitutional right.  Saucier, 533 U.S. at 210.  Second, only after completing the first step, courts then determined whether the right was clearly established.  See id.  In 2009, the Supreme Court revisited Saucier's two-pronged qualified immunity analysis, elucidating:

> [W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, 129 S. Ct. 808, 817 (2009).  Interpreting the effect of Pearson in this circuit, the Eleventh Circuit opined, "we are 'permitted to exercise [our] sound discretion' in deciding which prong of this inquiry to address first."  McCullough v. Antolini, 2009 U.S. App. LEXIS 3874, at *12 - *13 (11th Cir. Feb. 26, 2009).  Consequently, the Eleventh Circuit and Florida district courts continue to analyze

qualified immunity under the specific facts and circumstances of each case.  See id. at *12.

Defendants are entitled to qualified immunity.  The facts in this case simply do not rise to a violation of Plaintiff's constitutional rights either under the Eighth or First Amendment. (See supra Section III and infra Section V)  Because Plaintiff's allegations against Defendants do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).  Additionally, Plaintiff has not pointed to any clearly established law that would indicate that the actions of any of the Defendants violated his constitutional rights and deprive Defendants of qualified immunity for their actions.

## V. First Amendment – Retaliation

To the extent Plaintiff alleges ARNP Nichols retaliated against him for filing a grievance against her and another nurse, Plaintiff has not demonstrated entitlement to relief.  (Doc.1, Section V., p.14) In order to state a First Amendment retaliation claim, allegations must be more than "general attacks" upon a defendant's motivations, a plaintiff must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive.  Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). Conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act was in retaliation for filing grievances is not sufficient.  See White v. Thompson, No. CV406-207, 2007 WL 2324613, at *1 (S.D. Ga. June 20, 2007).

A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right.   Adams v. James, 784 F.2d 1077, 1082 (11th Cir.1986); Adams v. James, 797 F.Supp. 940, 949 (M.D.Fla.1992).  Courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated."  Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Plaintiff alleges that ARNP Nichols took Plaintiff's cane pass away from him as retaliation for him writing a grievance against her and another nurse. (Doc.1, Section V., p.14)  Plaintiff has misrepresented the facts here.  First, Plaintiff's cane pass was not "taken away," rather; the pass was modified to authorize Plaintiff's use of his cane only outside of the CM dormitory.  (Exhibit J at J3 ¶ 7, J20)  Second, while retaliation against an inmate for filing a grievance can violate an inmate's First Amendment rights, the inmate must establish that the grievance was the cause of the retaliatory treatment.  Thomas v. Warner, 237 Fed. Appx. 435 (11th Cir. 2007).  Plaintiff has not brought forth affirmative evidence of retaliation from which a jury could find that Plaintiff has carried his high burden of proving the requisite motive.  On the contrary, and as argued supra, the record establishes that the ARNP had several reasons for changing the nature of Plaintiff's cane pass, neither of which was a result of Plaintiff's grievance against the

ARNP.  (See Section III, G., pp.28-29)  Therefore, Plaintiff has failed to state a claim for retaliation under the First Amendment and this claim should be dismissed.

## VI.  Damages Claims and No Physical Injury

Plaintiff requests relief in the form of compensatory, nominal, and punitive damages in his complaint.  (Doc. 1, Section VII.) However, in order for an inmate to bring a civil action in federal court for mental or emotional injuries suffered while in custody, there must be a showing of physical injury.  42 U.S.C. §1997e(e). Section 1997e(e) of the PLRA states, "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. §1997e(e).  This circuit has held that the physical injury requirement of Section 1997e(e) applies to constitutional rights.  Harris v. Garner, 216 F.3d 970 (11th Cir.2000)(en banc), reinstating in part 190 F.3d 1279 (11th Cir.1999).

To the extent Plaintiff's claim for damages arises from any physical injury, Plaintiff has not demonstrated that Defendants' actions, individually or collectively, have led to a physical injury.  To the extent Plaintiff asserts a claim for mental or emotional injury, it is well settled in the law of the Eleventh Circuit, that compensatory and punitive damages are not available in the absence of a physical injury.  The Prison Litigation Reform Act of 1995 amends Section 7(e) of the Civil Rights of Institutionalized Persons Act to require a prior showing of physical injury before an inmate can bring a civil action for mental or emotional injury suffered while in custody.  As Plaintiff has shown no

37

physical injury with respect to this claims against Defendants, compensatory and punitive damages cannot be had.

In <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007), the Court held that the plaintiff prisoner who demonstrated no physical harm was not entitled to compensatory or punitive damages.  Since the issuance of <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007), the Eleventh Circuit has issued an unpublished opinion stating that under the law of the circuit,  § 1997e(e) bars claims where the prisoner plaintiff does not allege any physical injury.  See <u>Frazier v. McDonough</u>, 2008 U.S. App. LEXIS 2652, * 6 (11th Cir. 2008) (Exhibit L)  Accordingly, dismissal of Plaintiff's claim for damages is proper.

## VII. Plaintiff's Injunctive Claim

Plaintiff also seeks injunctive relief in the form of "effective" pain medication and the use of a walking cane.  Regarding the use of a walking cane, Plaintiff's claim is moot as the record indicates Plaintiff has a current pass for the use of a cane and that he is being permitted to use his cane outside of his cell within the dorm. (Exhibit J at J4, ¶ 8) With respect to the injunctive relief seeking "effective" pain medication, Plaintiff has failed to show the required elements of injunctive relief.  (Doc. 1)  A party moving for injunctive relief must show the following: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to him outweighs the threatened harm an injunction may cause the opponent; and (4) granting the preliminary injunction will not disserve the public interest.  <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1306 (11th

Cir.1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir.1989)).

Here, Plaintiff has failed to address or establish that there is a substantial likelihood that he will prevail on the merits.  Plaintiff has also failed to establish that there is a substantial likelihood that he will suffer irreparable injury. Plaintiff must show that the threat of injury is "neither speculative, but actual and imminent."  Northwestern Fla. Chapter of Ass'n of General Contractors of Am. V. City of Jacksonville, Fla. 896 F.2d 1293, 1285 (11th Cir. 1990)(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F. 2d 969, 973 (2d. Cir. 1989)); see also, Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994)(in order to obtain injunctive relief, a plaintiff must show "a real and immediate-as opposed to a merely conjectural or hypothetical threat of future injury.") In his complaint, Plaintiff does not allege that the absence of stronger medication than that of which he is currently prescribed, will likely lead to irreparable injury.  (Doc. 1) Plaintiff has not alleged or demonstrated that there is an actual imminent harm.  Plaintiff has also not demonstrated that the threatened injury to him outweighs the threatened harm an injunction may cause the opponent.   An injunction requiring the Florida Department of Corrections to prescribe narcotics to an inmate who possess no medical need for the same and who has a history of hoarding and trading prescription medication, would pose a threat to the security at the institution.  An injunction of this nature would cause the Department to unnecessarily expend resources on medication and surveillance of the Plaintiff to ensure he does not hoard or trade his prescription drugs.  Such an

39

injunction would disserve public interest and resources.  Therefore, Plaintiff's claim for injunctive relief must be denied.

## CONCLUSION

Wherefore, for the foregoing reasons, summary judgment must be entered in favor of the Defendants and the Complaint must be denied.

Respectfully submitted,

BILL McCOLLUM
ATTORNEY GENERAL

/s/Maricruz R. Fincher
Maricruz R. Fincher
Assistant Attorney General
Florida Bar No.: 0056853
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to: Ivan Harvey, DC # P29639, Santa Rosa Correctional Institution, 5850 East Milton Rd., Milton, Florida 32583-7914  this 13th day of December, 2010.

/s/Maricruz R. Fincher
Maricruz R. Fincher

40